**FOX ROTHSCHILD LLP**
(Formed in the Commonwealth of Pennsylvania)
Michael J. Viscount, Jr. (MV 4219)
Raymond M. Patella (RP 6161)
Brian R. Isen (BI 9738)
1301 Atlantic Ave, Suite 400
Atlantic City, NJ 08401
609-348-4515/fax 609-348-6834
mviscount@foxrothschild.com
rpatella@foxrothschild.com
bisen@foxrothschild.com
*Attorneys for the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| OYSTER CREEK INN, INC. | Case No. 13-22624 (GMB) |
| Debtor. | |
| OYSTER CREEK INN, INC., | Adv. Pro. No. 13-01841 (GMB) |
| Plaintiff, | |
| v. | ORAL ARGUMENT REQUESTED |
| RICHARD SIMON, TRUSTEE, JOHN DOE(s) and ABC CORP., | |
| Defendants. | |

**BRIEF IN SUPPORT OF DEBTOR'S CROSS-MOTION FOR PARTIAL SUMMARY
JUDGMENT AND RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY
<u>JUDGMENT DISMISSING THE WITHIN ADVERSARY ACTION</u>**

Oyster Creek Inn, Inc. ("Debtor") files this Cross Motion for Partial Summary Judgment and Response (the "Response") to Richard Simon, Trustee's ("Defendant" or "Simon") Motion for Summary Judgment Dismissing the Within Adversary Action (the "Motion") and in support thereof, alleges as follows:

## INTRODUCTION

This is an easy case.  Pre-petition, the Debtor's real property was transferred while the Debtor was insolvent for which the Debtor did not receive reasonably equivalent value.  Whether under Federal or state law, that transfer constitutes a fraudulent transfer, which the Debtor, as a debtor in possession in its bankruptcy case, with the powers of a trustee and acting on behalf of creditors, may avoid and recover the property transferred or the value of the transfer.

That transfer in this case was the loss of the Debtor's real property in a tax certificate foreclosure.  In order to enable municipalities to return property to the paying tax rolls without first having to foreclose, municipalities are permitted to sell or assign municipal liens for taxes and other assessments.  The municipality sells each municipal lien for the full amount of the lien and the successful bidder is the person who offers to purchase the lien subject to the lowest rate of interest on redemption.  The purchaser may, after two years from the date of sale, institute an action to bar the right of redemption by way of a strict foreclosure action in the Chancery Division of the Superior Court.  N.J.S.A. 54:5-86.  In such an action, the foreclosing tax certificate holder submits proofs and asks the court to fix the amount, time and place for redemption.  If no redemption is made by that deadline, final judgment is entered, and the property is transferred to the certificate holder who is vested with title.  N.J.S.A. 54:5-87.

Under New Jersey's strict foreclosure statute, competitive bidding is not present at the time of transfer of title which might otherwise ensure market forces were acting efficiently to create a fair (or a "reasonably equivalent") value for the property at issue.  There is no sheriff's

2

sale or auction except if the United States is a lien holder (as it was here).  Remarkably, and to further ensure that market forces would not create fair value for the Debtor's property, the Defendant *voluntarily dismissed* the United States as a defendant in the foreclosure action.[1]  The Defendant's voluntary actions precluded the holding of a judicial sale similar to the sale held at the conclusion of mortgage foreclosure actions and ensured the Debtor received no value for the transfer of its property.  The Defendant's foreclosure resulted in a forfeiture in which the Debtor lost property with an assessed value of over $1 million for failure to pay property taxes originally under $3,500.00, and with subsequent payments plus accrued interest totaled a mere $70,000.00.  The Defendant cannot now be heard to complain when its own actions ensured market bidding would be non-existent.

Accordingly, for the reasons stated herein, this Court should enter summary judgment in favor of the Debtor.

**FACTUAL BACKGROUND**

This adversary proceeding arises out of and is related to the bankruptcy proceeding In re Oyster Creek Inn, Inc., Bankr. Case No. 13-22624 (GMB) (the "Bankruptcy Case"), which case was commenced on June 6, 2013 ("Petition Date") and is currently pending in the United States Bankruptcy Court for the District of New Jersey (the "Court").  As relevant to the Debtor's partial summary judgment motion, there are no material facts in dispute.  There are several material facts in dispute precluding the granting of summary judgment for the Defendant on several of the remaining counts.

---

[1] Where the United States holds a subordinate lien on the property sought to be foreclosed, a judicial sale is required in order to discharge that lien.  28 U.S.C. § 2410.  In such cases, the court will not enter an order for redemption; instead, the court will enter a final judgment which provides for the holding of a judicial sale in the same manner as an ordinary mortgage foreclosure action.  See Realty Assets Props., Ltd. v. Oldham, 356 N.J. Super 16, 24 (App. Div. 2002).

The Debtor is a family owned seafood restaurant located in Leeds Point, New Jersey on the Great Bay, just 3 & 1/2 miles from the Town of Historic Smithville, New Jersey. Customers can get there by boat or car. The Debtor employs approximately 50 people seasonally in the summer, less in the winter and other months of the year.

It is uncontested that in 2008, the Galloway Township tax collector conducted an auction for unpaid municipal liens related to Block 1301, Lot 16; Block 1301, Lot 20; and Block 1301, Lot 23-26 in Galloway Township (collectively, the "Property"), and the Defendant was the successful bidder at this sale. The Defendant filed a foreclosure action on September 14, 2011, and the foreclosure unit entered an Order Setting Time, Place and Amount of Redemption, setting the redemption amount at over $70,000.00. Wolfson Cert., ¶11. On December 14, 2011, the Defendant voluntarily dismissed the United States of America as a Defendant. A copy of that voluntary dismissal is attached as Exhibit "A". On June 19, 2012 a Final Judgment was entered in the foreclosure action, a copy of which is attached hereto as Exhibit "B". Under New Jersey law, entry of the Final Judgment purportedly transferred title to the Defendant for which the Debtor received no value and is referred to as the "Transfer" herein. Although the amount of equity in the property may be in dispute, upon information and belief, the Defendant concedes that at the time of the Transfer, there was equity in the property.[2]

Subsequent to entry of the Final Judgment, the Defendant purportedly entered into a lease (the "Lease") with the Debtor dated December 11, 2012. The original Lease which is in the Debtor's possession is not signed by the Defendant. The copy of the Lease filed among papers in this Court was signed by the Defendant and is available at Docket No. 5 in the main case. The purported Lease has a varied rent due monthly, with more rent due in the months in which the

---

[2] The Property was assessed at the time of the Transfer at over $1,000,000.00.

4

Debtor's business is stronger and less rent due in months in which the Debtor's business is slower. Interestingly, the Debtor retains all indicia of ownership of the property including possession, the duty to make repairs, and pay for insurance and taxes. The Defendant retains no indicia of ownership.

## CROSS-MOTION FOR SUMMARY JUDGMENT

The Debtor hereby moves for summary judgment as to counts one, two, three and five of the Complaint. Count one seeks avoidance of the Transfer under § 548 of the Bankruptcy Code. Counts two and three seek avoidance of the Transfer under § 544 and New Jersey state law. Count five seeks recovery of the Transfer, or the value of the Transfer under § 550 of the Bankruptcy Code.

### A.    The Summary Judgment Standard.

Federal Rule of Civil Procedure 56, applicable to the within adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056, provides for the granting of summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under governing [substantive] law." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1985). A dispute fact is genuine if "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Once the moving party for summary judgment has sufficiently demonstrated the absence of the genuine issue of material fact, the opposing party must show that there are disputed facts that must be decided at trial, employing the means contemplated in Rule 56(c) and (e). Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2252-54 (1986). In this matter, the Debtor submits that the

5

Defendant is unable to demonstrate that there are any disputed facts that require adjudication at trial, and accordingly the Debtor is entitled to summary judgment.

    **B.**    **The Transfer is a Fraudulent Transfer under Section 548 of the Bankruptcy Code.**

Under § 548 of the Bankruptcy Code:

> (a)(1) The trustee may avoid any transfer … of an interest of the debtor in property, … that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
> > (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> >
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> >
> > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> >
> > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> >
> > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured;

Here, the Debtor's schedules reflect assets of $240,686.23 and liabilities of $975,700.88. A copy of the schedules is attached hereto as Exhibit "C". Upon information and belief, those figures have not materially changed from the date of the Transfer. Accordingly, there is no dispute that the Transfer occurred while the Debtor was insolvent, or that the Transfer caused the Debtor to become insolvent.

Furthermore, there is also no dispute that the Debtor received "no value" – let alone "reasonably equivalent value" in exchange for the Transfer. The Transfer caused the Debtor to forfeit property assessed at over $1 million for under $100,000 in unpaid taxes. In addition, upon information and belief, the Defendant does not dispute there is equity in the property.

### C. The Transfer is a Fraudulent Transfer under § 544(b) of the Bankruptcy Code and N.J. St. Ann. § 25:2-25.

Under Section 544(b) of the Bankruptcy Code: "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." Accordingly, turning to New Jersey state fraudulent transfer law, N.J.S.A. 25:2-25 provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> > (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> >
> > (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

Here, there is no dispute that the Debtor was indebted to one or more creditors as evidenced by not only the Debtor's schedules but also the claims filed in this case, of which the Debtor requests that the Court take judicial notice. Second, as before, there is no dispute that the

7

Debtor received "no value" – let alone "reasonably equivalent value" in exchange for the Transfer.  Finally, as evidenced by the bankruptcy filing itself, the Debtor incurred debts beyond its ability to pay.

> **D.    The Transfer is a Fraudulent Transfer under § 544(b) of the Bankruptcy Code and N.J. St. Ann. § 25:2-27.**

Under Section 544(b) of the Bankruptcy Code "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."  Accordingly, turning to New Jersey state fraudulent transfer law, N.J.S.A. 25:2-27 provides:

> A transfer made or obligation incurred by a debtor is fraudulent as
> to a creditor whose claim arose before the transfer was made or the
> obligation was incurred if the debtor made the transfer or incurred
> the obligation without receiving a reasonably equivalent value in
> exchange for the transfer or obligation and the debtor was
> insolvent at that time or the debtor became insolvent as a result of
> the transfer or obligation.

Similar to the analysis above for § 548 of the Bankruptcy Code, the Debtor was insolvent at the time of the Transfer or the Transfer caused the Debtor to be insolvent.  Furthermore, there is also no dispute that the Debtor received "no value" – let alone "reasonably equivalent value" in exchange for the Transfer.

> **E.    The Case aw Addressing the Transfer of Property in a Tax Certificate Foreclosure Sale.**

Recent caselaw in this Court holds that a transfer of real property arising out of a tax certificate foreclosure can constitute a fraudulent transfer under the Federal or state law cited above.  Earlier this year, Judge Kaplan of this Court held that a tax foreclosure sale conducted in accordance with New Jersey law, that did not provide for advertising or competitive bidding, did

8

not conclusively establish "reasonably equivalent value" for the chapter 11 debtor's real property. See In re Berley Associates, 323 B.R. 433, 434 (Bankr. D. N.J. 2013).[3] In Berley, the chapter 11 debtor brought an adversary proceeding to set aside the prepetition transfer of its real property to a tax certificate holder as a constructively fraudulent transfer or a preference. Id. at 435.

Judge Kaplan's analysis focused on the difference between the mechanics and procedures of a tax sale foreclosure on the one hand and the foreclosure of mortgages on the other hand, and specifically rejected the applicability of two decisions relied on by the Defendant: (1) BFP v. Resolution Trust Corp., 511 U.S. 531 (1994)[4] and (2) In re McGrath, 170 B.R. 78 (Bankr. D. N.J. 1994).[5]

Judge Kaplan rejected Judge Stripp's analysis and refused to extend BFP to tax sales:

> The Court agrees with the Debtor's position that the mechanics and procedures in mortgage and real estate tax foreclosures are distinctly different, leading to paramount substantive differences. Significantly, in a mortgage foreclosure action, competitive bidding for the underlying property is encouraged by means of advertising and public auction. As a result, a value for the property may be inferred. By contrast, with regard to tax sales, public

---

[3] Counsel for the Defendant also represented the defendant in the Berley case.

[4] In BFP the Supreme Court addressed the issue of "reasonably equivalent value" in the context of a mortgage foreclosure sale. The Supreme Court held that in the case of a mortgage foreclosure, "reasonably equivalent value" is the price received at a regularly conducted, non-collusive sale of the mortgaged property with bidding taking place at the sale. Id. at 535. The Supreme Court, however, clearly limited its holding to mortgage foreclosure actions resulting in public sale. The Court specifically stated that "considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different. Id. at 537, n.3. As will be set forth below, courts have consistently refused to extend the holding in BFP to tax sale certificate foreclosures where there is no competitive bidding and the property owner receives no value when the property is transferred.

[5] In McGrath, Judge Stripp concluded that mortgage and tax sale certificate foreclosures are similar enough to apply the rationale in the Supreme Court in BFP to tax sales. Judge Stripp, however, himself appears to have reconsidered whether a tax sale certificate foreclosure may be considered a fraudulent transfer in In re 2435 Plainfield Avenue, Inc., 72 F. Supp. 2d 482 (D.N.J. 1999), aff'd 213 F.3d 629 (3d Cir. 2000). Judge Stripp held that a tax sale could be set aside under either a state law fraudulent transfer or equity theory. The In re 2345 Plainfield Ave., Inc. decision was affirmed by the Third Circuit; however, no opinion was published and its affirmance was referenced in the Table of Cases. Per the Third Circuit rules relating to published decisions, a reference from the Table of Cases has no precedential value and is not binding on this Court. See 3d Cir. I.O.P. 5.7.

9

> bidding occurs at the inception of the process, within months after the delinquency, and is limited to the rate of interest on the unpaid taxes (which amounts have little connection to the value of the property). Similarly, the fixed redemption amount at the time of foreclosure of the tax sale certificate is calculated from the accrued taxes and interest thereon, not the value of the underlying property.

In re Berley Associates, 323 B.R. at 439.

Furthermore, Judge Kaplan in Berley found that equity, or "fairness" of the price, is the paramount consideration in determining whether to set aside a tax sale. Id. at 440. The court reasoned that competitive bidding is a "central factor" when analyzing fairness in the value of a transaction. Id. Because competitive bidding is absent in a tax sale foreclosure situation, the court found this a "significant bar" in finding reasonably equivalent value present. Id.[6] Finally, the court reasoned that because New Jersey's strict foreclosure statute precluded competitive bidding, market forces were not permitted to create "fair value". Id. at 441.[7]

---

[6] The Defendant also argues that "avoiding the transfer as fraudulent here would impede the ability of the municipalities throughout the state of New Jersey to raise revenue, as a transfer of title to real property may be undone by the mere filing of a bankruptcy." Brief, p. 26. Judge Kaplan rejected the same argument presented by counsel for the Defendant in Berley:

> Lastly, the Court submits that Eckert ascribes far too much weight to the impact of this or any decision on the vigor and hardiness of the tax sale certificate industry. This court has confidence that experienced investors are capable to factor in the minimal risks that all of the following may occur: (i) the property owner or a mortgagee fails to redeem the property by the date ordered by the court; (ii) the property has a value exceeding the value of the tax liens, with sufficient equity above all other liens and encumbrances; (iii) the property owner files a bankruptcy proceeding; (iv) the property owner pursues a fraudulent transfer and/or preference action to recover the transferred value; and (v) the property owner prevails on its litigation efforts. Given the volume of tax sale certificates sold throughout New Jersey, the Court remains dubious of an investor's decision to forego the opportunity to obtain a return on their investment of over eighteen percent, merely to avoid the aforementioned risks.

In re Berley Associates, 323 B.R. at 443.

[7] The Berley Court also noted that courts in other jurisdictions have refused to extend the holding in BFP to tax foreclosures. See Wentworth v. Town of Acton (in re Wentworth), 221 B.R. 316 (319-320) (Bankr. D. Conn. 1998); Sherman v. Rose (In re Sherman), 223 B.R. 555, 559 (10th Cir. BAP 1998); D'Alfonseo v. A.R.E.I. Inv. Corp. (In re D'Alfonso), 211 B.R. 508, 518 (Bankr. E.D. Pa. 1997). The Defendant attacks these holdings because "tax foreclosures in those states lack the features of tax foreclosures in New Jersey". Brief, p. 24-25. The procedures in

10

Here, the Defendant concedes there is equity in the property. Furthermore, because the United States originally was a defendant in the state court foreclosure action, the Defendant would have been required to proceed to a public judicial sale as opposed to a strict foreclosure. But the Defendant chose to *voluntarily dismiss* the United States from the suit, presumably, to enable the Defendant to acquire the property "in secret" without the pull of market forces. The fraudulent transfer laws are intended to capture the very set of circumstances which Defendant complains about. The Defendant, having voluntarily acted in the state court, cannot now be heard to complain that its own prior actions may prejudice itself in this Action. Accordingly, the Debtor believes that this Court should follow the court's reasoning in Berley, apply it in this case and grant summary judgment as to counts one, two, and three of the Complaint.

    **F.**    **Assuming the Court Grants Summary Judgment on Counts One, Two and Three of the Complaint, the Court Should Also Grant Summary Judgment on Count Five.**

Assuming the Court avoids the Transfer under either Federal or state fraudulent transfer law, the Court should also permit the Debtor to recover the Transfer under § 550 of the Bankruptcy Code. Section 550 of the Bankruptcy Code provides:

> [T]o the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

---

these jurisdictions may differ in some respects from the procedures in New Jersey, but all of these states' procedures do not involve a process of competitive bidding which achieves the highest value of the property at the time of the sale.

11

Here, once the Transfer is avoided, § 550 requires the Court to allow the Debtor to recover either the property transferred, or the value of the property. The Debtor requests that the Court order the return of the property transferred.[8]

**RESPONSE TO DEFENDANT'S MOTION**

The Debtor incorporates its arguments above in response to the Defendant's Motion and will not reiterate them here. In response to Defendant's other arguments, the Debtor asserts as follows.

    **A.    The Settlement Agreement and Release Do Not Preclude Oyster Creek From Pursuing this Adversary Proceeding.**

The Defendant argues that the broad language of the release contained within the lease between the Debtor and the Defendant somehow precludes the Debtor from bringing this action. As a matter of law, the Defendant is incorrect. Third Circuit law holds that avoidance actions are not property of the debtor that can be sold, transferred or released, but rather, are actions brought on behalf of creditors generally.

First, pre-petition waivers and releases by a pre-petition debtor are not enforceable against a bankruptcy trustee or a debtor in possession such as the Debtor. See In re Vision Metals, Inc., 327 B.R. 719, 721 (Bankr. D. Del. 2005). The instant situation is no different than a creditor purporting to enforce a prepetition waiver of the automatic stay against a trustee which courts routinely reject. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991) (reasoning because automatic stay serves interests of both debtors and creditors, it

---

[8] Interestingly, if the Debtor is successful in avoiding the transfer of the property AND the Defendant is correct that it is a valid "general partnership" under New Jersey law, then the Debtor requests that this Court enter judgment against not only the Defendant but any general partners of the Defendant, including any individuals, as each are jointly and severally liable under New Jersey law.

12

may not be waived and its scope may be not limited by debtor). Accordingly, for this reason alone, the Motion must be denied.

More importantly, binding Third Circuit precedent precludes the relief requested by the Defendant. See In re Cybergenics Corp., 226 F.3d 237 (3d Cir. 2000). In Cybergenics, the issue before the Third Circuit was whether fraudulent transfer claims were transferred in an asset sale approved by the bankruptcy court under section 363 of the Bankruptcy Code. Id. at 239. During the course of the case, the debtor sold its assets to a successful purchaser and the sale was approved by the Bankruptcy Court. Id. The sale agreement provided that the purchaser bought "all of the rights, title and interest of [the debtor]." Id. After the Debtor refused to bring the claims,[9] the creditors' committee appointed in the case obtained leave of the bankruptcy court to pursue fraudulent transfer claims[10] against certain persons and entities arising as a result of a leveraged buyout. Id. at 240. The defendants in that suit asserted that the claims were sold in the bankruptcy court approved asset sale. Id.

The Third Circuit held that a bankruptcy trustee's avoidance powers, such the ability to bring a fraudulent transfer action, were not assets of the debtor that could be "sold" in a bankruptcy sale; rather, the powers belong to creditors generally and arise in the bankruptcy case, with the trustee acting on behalf of creditors generally. In reaching its holding, the court reasoned that "[t]he fact that section 544(b) authorizes a debtor in possession, such as Cybergenics, to avoid a transfer using a creditor's fraudulent transfer action does not mean that the fraudulent transfer action is actually an asset of the debtor in possession, nor should it be confused with the separate authority of a trustee or debtor in possession to pursue the prepetition

---

[9] Interestingly, and as directly relevant here, one basis the debtor offered for not pursuing the claims was that the claims "already had been released" in settlement of a lawsuit the debtor filed pre-petition. Id. at 240 n.2.

[10] As here, the fraudulent transfer claims were brought under New Jersey fraudulent transfer law.

13

debtor's causes of action that become property of the estate upon the filing of the bankruptcy petition. Rather, it simply enables a debtor in possession to carry out its trustee-related duties."

Id. at 243 (citations omitted). In its central reasoning in the decision, the Third Circuit wrote:

> The power to avoid the debtor's prepetition transfers and obligations to maximize the bankruptcy estate for the benefit of creditors has been called a "legal fiction" by one court. It puts the debtor in possession "in the overshoes" of a creditor. This attribute is no more an asset of Cybergenics as debtor in possession than it would be a personal asset of a trustee, had one been appointed in this case. Much like a public official has certain powers upon taking office as a means to carry out the functions bestowed by virtue of the office or public trust, the debtor in possession is similarly endowed to bring certain claims on behalf of, and for the benefit of, all creditors.
>
> As further evidence that the avoidance powers neither shift ownership of the fraudulent transfer action to the debtor in possession, nor are themselves a debtor's assets, we note that courts have limited a debtor's exercise of avoidance powers to circumstances in which such actions would in fact benefit the creditors, not the debtors themselves. Rather than improving the debtor's own bottom line, empowering the trustee or debtor in possession to avoid a transaction by pursuing an individual creditor's cause of action is a method of forcing that creditor to share its valuable right with other unsecured creditors.

Id. at 243-44 (citations omitted).

Finally, the Court concluded:

> Based on the foregoing analysis, we reach the inescapable conclusion that the fraudulent transfer claims, which state law provided to Cybergenics' creditors, were never assets of Cybergenics, and this conclusion is not altered by the fact that a debtor in possession is empowered to pursue those fraudulent transfer claims for the benefit of all creditors. The avoidance power itself, which we have analogized to the power of a public official to carry out various responsibilities in a representative capacity, was likewise not an asset of Cybergenics, just as this authority would not have been a personal asset of a trustee, had one been appointed. Thus, we conclude that the fraudulent transfer claims asserted in the Committee's complaint were not sold in the 1996 asset sale.

14

Id. at 245.

Here, the Debtor has filed a complaint to set aside and avoid the pre-petition transfer of its property on behalf of all creditors. The first three counts of the complaint seek to do so as a fraudulent transfer. Count four and count seven seek to avoid the transfer under the trustee's strong arm powers under section 544 of the Bankruptcy Code. Count five seeks to recover the transfer, or the value of the transfer under section 550 of the Bankruptcy Code and count six seeks to disallow any claim filed by the Defendant under section 502(d) of the Bankruptcy Code. The last count, count eight, merely seeks to clarify the Debtor is the owner of the property if successful in this action. Thus, the Debtor is merely asserting a multiple count avoidance action complaint along with accompanying counts to recover the transfer and object to a claim. The Third Circuit has ruled in Cybergenics that avoidance actions cannot be sold in bankruptcy sales, and if such actions cannot be sold, they cannot be released. Accordingly, under binding Third Circuit precedent, the Motion must be denied.

    **B.**    **The Foreclosure Is Not An Avoidable Preference.**

The Defendant argues that the Debtor may not rely on 11 U.S.C. § 547(b) to undo the final judgment of foreclosure as an avoidable preference. Brief, p. 26. The Debtor does not allege that the Transfers constitute avoidable preferences pursuant to section 547 of the Bankruptcy Code.

    **C.**    **Abstention is Not Appropriate.**

The Defendant argues that this Court should apply the discretionary abstention doctrine and allow this adversary proceeding to continue in state court. The Defendant is incorrect.

Discretionary abstention under § 1334(c)(1) is the strong exception, not the rule. Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad, 6 F.3d 1184, 1194 (7th Cir. 1993). This

15

action to avoid the transfer made to the Defendant is brought in accordance with §§ 544, 547 and 548. While § 544 does not stand independently, incorporating applicable state law, actions brought under each of these sections are deemed "core proceedings", thereby conferring on this Court original jurisdiction over such matters. 28 U.S.C. § 157(b)(2)(F),(H); § 1334(b). Once presented with a valid basis for jurisdiction, it is the general rule that courts are to exercise that grant of jurisdictional authority. <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976) ("abstention rarely should be invoked, because the federal courts have a virtually unflagging obligation to exercise the jurisdiction given them"). This is especially true with respect to "core proceedings". <u>See</u> <u>In re Millenium Seacarriers, Inc.</u>, 419 F.3d 83, 96 (2nd Cir. 2005). Proceedings to determine, avoid or recover fraudulent transfers are "core" matters. 28 U.S.C. § 157(b)(2).[11]

Matters for which permissive abstention is reserved include: (1) matters in which difficult, uncertain issues of state law or those in which the state has a unique interest are presented; (2) matters in which the proceeding has been removed from state court and/or there is a parallel state court action pending; (3) the proceedings principally involve claims asserted by or against non-debtors; and (4) matters in which some other truly extraordinary aspect is present. <u>In re Direct Response Media, Inc.</u>, 466 B.R. 626 (Bankr. D. Del. 2012). None of these elements are present here.

Because there is such "a 'narrow sphere' of cases in which discretionary abstention should be granted under § 1334(c)(1)," courts in this circuit have set out a multi-factor test for determining which cases are appropriate for the doctrine. <u>Id.</u> Courts must consider: (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state

---

[11] The Defendant's assertion that this pending action is "non-core" is incorrect. <u>Brief</u>, p. 17.

16

law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of "non-debtor parties."  In re LaRoche Industries, Inc., 312 B.R. 249 (Bankr. D. Del. 2004).

Abstention is not appropriate here for the simple reason that nothing is presently pending in state court for this court to "abstain."  But even putting aside that issue, the Debtor's claims do not involve difficult issues of state law to which this Court is unaccustomed.  No matters have been removed to state court and there is no parallel state court action.  This is not a case with particularly novel legal issues.  This Court addresses claims that arise under the Bankruptcy Code and state law, and in particular, avoidance actions, on a regular basis.

Moreover, addressing the specific factors in In re LaRoche Industries, Inc., state law issues do not predominate over the bankruptcy issues; New Jersey state law on fraudulent transfers is well settled law; there is no parallel state court proceeding; the claims at issue are core proceedings; any judgment rendered by the bankruptcy court would be enforced in any state court and there would be no further burden on this Court's docket.  These factors favor the Court retaining jurisdiction and not exercising its discretion to engage in permissive abstention of the issues before it.

Accordingly, permissive abstention is not appropriate in this case.

### D. The Defendant Fails to Provide Information Related to Richard Simon, Trustee.

The Defendant requests that this Court grant summary judgment in its favor with respect to the Debtor's allegations in count four of the Complaint that the Defendant is a non-existent entity, the Final Judgment is void, voidable or not enforceable. The Defendant makes the bold assertion that Richard Simon, Trustee is a valid partnership under New Jersey law; however, the Defendant provides no proof to establish that Richard Simon, Trustee is a valid partnership According to the Wolfson Cert., Richard Simon Trustee is a trade name for a New Jersey Partnership which files tax returns and has tax ID numbers. The Defendant has attached no documentation to support these allegations. Here, there is a factual dispute as to whether or not Richard Simon, Trustee exists. Therefore, it is premature – before discovery or even a pre-trial conference – for this Court to even consider granting summary judgment with respect to Count Four of the Complaint and thus should deny that portion of the Defendant's Motion.

### E. The Rooker–Feldman Doctrine Does Not Apply.

The Defendant maintains that the Court lacks subject matter jurisdiction in this lawsuit based upon the Rooker–Feldman Doctrine. Rooker–Feldman precludes lower federal courts from acting as appellate courts and reviewing state-court judgments. The Defendant is mistaken in its understanding of Rooker–Feldman and this doctrine is not applicable to this adversary proceeding. It is true that Rooker–Feldman precludes lower federal courts from exercising appellate jurisdiction over final state-court judgments. See Lance v. Dennis, 546 U.S. 459 (2006). However, the Supreme Court has explained that Rooker–Feldman is a narrow doctrine, confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court

18

review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Rooker-Feldman does not apply when a federal statute specifically authorizes a lower federal court to vitiate a state court judgment. In re Martyak, 432 B.R. 25, 31 (Bankr. N.D.N.Y. 2010). Various sections of the Bankruptcy Code, including section 548, empower bankruptcy courts to avoid state judgments, to modify them, and to discharge them. See In re Gruntz, 202 F.3d 1074 (9th Cir. 2000) (en banc). The Debtor is exercising its powers under chapter 5 of the Bankruptcy Code to set aside the fraudulent transfer of the Debtor's real property under 11 U.S.C. §§ 544, 548 and 550, and therefore, Rooker–Feldman does not apply.

## CONCLUSION

For reasons stated herein, the Debtor requests that this Court enter summary judgment in favor of the Debtor on counts one, two, three and five, deny the Defendant's Motion and for such other relief as may be just.

**FOX ROTHSCHILD LLP**
(Formed in the Commonwealth of Pennsylvania)

*Counsel for Debtor and Debtor-in-Possession*

By:  */s/ Brian R. Isen*
　　　Brian R. Isen

Dated: November 19, 2013