**FOX ROTHSCHILD LLP**
(Formed in the Commonwealth of Pennsylvania)
Michael J. Viscount, Jr. (MV 4219)
Raymond M. Patella (RP 6161)
Brian R. Isen (BI 9738)
1301 Atlantic Ave, Suite 400
Atlantic City, NJ 08401
609-348-4515/fax 609-348-6834
mviscount@foxrothschild.com
rpatella@foxrothschild.com
bisen@foxrothschild.com
*Attorneys for the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| OYSTER CREEK INN, INC. | Case No. 13-22624 (GMB) |
| Debtor. | |
| OYSTER CREEK INN, INC., | Adv. Pro. No. 13-01841 (GMB) |
| Plaintiff, | |
| v. | |
| RICHARD SIMON, TRUSTEE, JOHN DOE(s) and ABC CORP., | |
| Defendants. | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF DEBTOR'S CROSS-MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**

Oyster Creek Inn, Inc. ("Debtor") files this Supplemental Brief in Support of Debtor's Cross Motion for Partial Summary Judgment and in support thereof, asserts as follows:

This Court should not extend the reasoning of BFP v. Resolution Trust Corp. to New Jersey tax sale foreclosures which, as here, were not completed at a judicial sale with public notice of the sale and the opportunity of competitive bidding.  New Jersey's two-step tax foreclosure process where no judicial sale takes place simply does not trigger the presumption of "reasonably equivalent value" arising from BFP.  Any bidding on the certificate relates only to the interest rate paid on the certificate and has no relation to the value of the property.  After a specified period of time, if the property owner fails to redeem the tax certificate, in most cases (as here) title to the property is transferred without a public sale to the lienholder, without notice to the marketplace or to any potential interested buyers and with no chance of competitive bidding.  As reasoned by BFP, the market forces and competitive bidding process ensure value is received at the sale.  Tax sales do not have such protections.

In this case, title to the property was forfeited when Richard Simon, Trustee ("Simon" or "Defendant") received title to property assessed at over $1 million, many multiples of the total amount due and owing to Simon.  Without a judicial sale, title was transferred in secret.  Market forces along with competitive bidding, which would otherwise prevent a lienholder from receiving a windfall, were not present.  Without the benefit of a public sale of the underlying property prior to the transfer to the Defendant, the Debtor failed to receive reasonably equivalent value in return for the transfer of its most significant asset to the Defendant.

### A.    BFP Does Not Apply to Tax Foreclosures

The Supreme Court in BFP held that "a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all of the requirements of the State's foreclosure law have been complied with."  BFP v. Resolution Trust Corp., 511 U.S. 531, 545 (1994).  The Supreme Court specifically emphasized that its

opinion covered only mortgage foreclosures of real estate and that "[t]he considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different. Id. at 537, n.3. Here, there are numerous other considerations that this Court must take into account, and thus the holding in BFP should not apply.

> **B.    This Court Recently Held BFP Does Not Apply Because the Value of the Property is Not Established**

The plain language in the BFP holding is clear: assuming a non-collusive, regularly conducted process, where there is a "foreclosure sale" and a "price" received at the sale, BFP deems the value received as "reasonably equivalent value" and precludes avoidance of the sale as a fraudulent transfer. In New Jersey, tax sale foreclosures are a two-step process, neither of which involves a "price" or "foreclosure sale". First, interested bidders (if any) bid an interest rate and purchase the tax certificate at the tax sale by paying the taxes then due – there is no monetary "price" paid. At the second step of the process, the owner's equity of redemption is foreclosed and the property is forfeited to the lienholder. There is no "judicial sale" before title is transferred. These are the distinguishing factors between BFP and this case. Without a "price" and a "foreclosure sale", BFP cannot apply.

Judge Wizmur of this Court recently held that BFP does not apply to tax certificate foreclosures. In re Varquez, Bankr. Case No. 13-30571-JHW (Bankr. D. N.J. Dec. 13, 2013). A copy of the opinion is attached hereto as Exhibit "A". The issue before the Court in Varquez was identical to the issue here: should the holding in BFP be extended to tax certificate foreclosures. Judge Wizmur wrote:

> I conclude that the answer is no. The reason is simple. Under the New Jersey Tax Sale Law, at the point of the entry of a judgment of foreclosure, there is no sale, forced or otherwise. There is simply the foreclosure of the debtor's equity of redemption, and the transfer of a fee simple interest in the property to the tax sale certificate holder. N.J.S.A. § 54:5-87. In contrast, mortgage foreclosure processes in

3

> New Jersey customarily involve the entry of a judgment of foreclosure in favor of the mortgagee, followed by a sale process conducted by the sheriff of the county where the property is located.
>
> \*\*\*\*
>
> Unlike the acquisition of title to property by a purchaser through a mortgage foreclosure sheriff's sale, which follows extensive public advertisement and a public auction, the acquisition of free and clear title to property by a tax sale certificate holder through the foreclosure of a debtor's equity of redemption involves no sale, no notice requirements to third parties, no auction procedures, and no other exposure to the marketplace in any way.

Id. at 12. Judge Wizmur further reasoned:

> In the context of New Jersey tax sale certificate foreclosures, the sale aspect of the transaction occurs at least two years before the transfer of title to the property, when the municipality that is owed a tax by the debtor sells its lien against the debtor's property to a successful bidder. The auction process for the purchase of a tax sale certificate has similar noticing requirements to mortgage foreclosure sales, see N.J.S.A. § 54:5-26, but the process does not relate to the value of the property. The amount bid on by prospective purchasers of the tax sale certificate is the same for all purchasers. It is the amount of the outstanding charges owed to the municipality. N.J.S.A. § 54:5-25 and 5-31. The successful purchaser is the purchaser who bids for the property "subject to redemption at the lowest rate of interest, but in no case in excess of 18% per annum." N.J.S.A. § 54:5-32. In other words, the bidders are only bidding on the interest rate to be paid to them by the debtor in the event that the debtor redeems the certificate. If the two year redemption period expires without redemption by the debtor, and the successful purchaser achieves a judgment of foreclosure, fee simple title to the property vests in the purchaser. The purchaser will have paid the amount of the outstanding municipal charges due on the property. The "value" received by the debtor, i.e., the satisfaction of the outstanding tax debt due to the tax sale certificate holder, has no relation to the value of the property being transferred. The concept of "reasonably equivalent value" cannot rest on the amount of tax debt paid by the purchaser two years prior to the transfer of title.

Id. at 13-14 (footnote omitted). For the reasons set forth in Varquez, and in In re Berley Associates, 323 B.R. 433, 434 (Bankr. D. N.J. 2013), the Debtor asserts that BFP does not apply to tax certificate foreclosures in New Jersey.

4

### C. Numerous Decisions Have Refused to Extend BFP

Courts have refused to extend BFP to tax foreclosure sales in other jurisdictions where there is no judicial sale of the underlying property.

In Maine, the bankruptcy court refused to extend BFP where there was no judicial sale: "[t]he rationale of the cases extending BFP to tax foreclosure sales does not apply to the instant matter because under Maine's forfeiture procedure for foreclosure of tax liens, the property was transferred without the possibility of judicial oversight, without competitive bidding, and without a public sale." Wentworth v. Town of Acton (In re Wentworth), 221 B.R. 316, 319-320 (Bankr. D. Conn. 1998). Like New Jersey, there is a forfeiture procedure, and the forfeiture procedure "eliminates rather than redefines the market." Id. at 320. In Wentworth, debtor's real property with a market value of $20,700 was transferred for a tax lien of $1,515.63.

In Wyoming, the tax sale statutes "do not permit a public sale with competitive bidding". Sherman v. Rose (In re Sherman), 223 B.R. 555, 559 (10th Cir. BAP 1998). Like New Jersey, "the Wyoming foreclosure sale statutes do require a public auction, with, by definition, competitive bidding." Id. The Bankruptcy Appellate Panel for the Tenth Circuit refused to extend BFP because the "Wyoming tax sale statutes do not have the protections as do the Wyoming foreclosure sale statutes." Id. Here, the Debtor's real property valued at a price between $10,000 and $50,000 was sold for only $450.00. Id.

In Wisconsin, no judicial sale is held before title is transferred back to the municipality. City of Milwaukee v. Gillespie, 487 B.R. 916 (E.D. Wis. 2013). The District Court determined that if "the property is seized without a sale or competitive bidding, it cannot be presumed as a matter of law that 'reasonably equivalent value' was received by a debtor transferor because market forces were completely absent." Id. at 920.

5

In these cases, the courts focused on the differences between mortgage foreclosure sales and tax foreclosures sales. Judge Kaplan recognized this distinction Berley when he declined to extend the holding in BFP.

### D.    The Cases Cited by Simon Extending BFP are Distinguishable

The Defendant is mistaken when he suggests that tax sales in Pennsylvania, Missouri, Virginia and Iowa have the same if not greater protections under state law as mortgage foreclosures. Brief, p. 20. In these jurisdictions, the courts may have extended the holding in BFP, but there are much greater protections afforded to property owners than in New Jersey tax sales. As noted below, in Pennsylvania, Missouri, Virginia and Iowa, an actual sale of the property is held, allowing market forces to develop competitive bidding to achieve the highest possible value for the property. The judicial sale procedures prevent the lienholder from receiving a windfall. Properties with values which far exceed the amount due to taxing authorities are not stolen by the lienholder for nominal consideration.

In Missouri, the "delinquent taxes, interest and charges provide a floor price or starting point for the sale . . . and presumably, prospective purchasers may bid far in excess of the presumed fair market value of any tract." In re Russell-Polk, 200 B.R. 218, 222 (Bankr. E.D. Mo. 1996). The court extended the holding in BFP because the property is opened to the "competitive bidding system, very much like a mortgage foreclosure sale." Id.

In Virginia, a judicial sale is conducted by an officer designated by the circuit court or statute. In re Washington, 232 B.R. 340, 345 (Bankr. E.D. Va. 1999). The sale of the property takes place by public auction and the bidder pays a monetary figure for the property. Id. The court extended the holding BFP because there are protections at least as adequate as those provided in mortgage foreclosure actions and most importantly, a judicial sale is held.

6

In Iowa, the tax sale of the property takes place by public auction, and the winning bidder pays, at a minimum, the total amount of taxes, interest, fees and costs due. In re Johnson, Adv. No. 98-98223, 1999 Bankr. LEXIS 2075, at *9 (Bankr. S.D. Iowa 1999). Simon notes there is a "bid-down" provision, but there is no bid-down of the interest rate as in New Jersey. Id. at *10. The procedures in Iowa involve public notice, public sale and competitive bidding. Id. at 12. Moreover, the court in Johnson noted the difference between Iowa procedures and those in Maine and Wyoming, where there is no public sale of the property with competitive bidding. Id. at *11.

In Pennsylvania, tax sales also involve the holding of a sale with competitive bidding with monetary consideration paid at the sale. "The upset price equals the sum of tax claims (liened and accrued) of any taxing entity plus interest thereon, municipal claims, record costs and costs of sale." Lord v. Neumann (In re Lord), 179 B.R. 429, 435 (Bankr. E.D. Pa. 1995). The Tax Claim Bureau can "take no less than the upset price. If a price above the upset price is offered, the property is sold to the highest bidder." In re Golden, 190 B.R. 52, 55 (Bankr. W.D. Pa. 1995). Simon argues that multiple bankruptcy courts in the Third Circuit have concluded that "the amount paid at tax foreclosures in compliance with state laws is the 'reasonably equivalent value' under 11 U.S.C. § 548." Brief, p. 21. Simon, citing to Lord and Golden, ignores the holding in D'Alfonso v. A.R.E.I. Inv. Corp. (In re D'Alfonso), 211 B.R. 508, 51 (Bankr. E.D. Pa. 1997), another case from the same district which reached an opposite conclusion and refused to extend the holding in BFP.

In all of these jurisdictions, there is a sale and public auction of the underlying property. These tax sales are similar to New Jersey mortgage foreclosure sales in that there is a minimum required monetary bid that must be paid, as opposed to New Jersey tax foreclosures, where there

7

is no judicial sale and no cash consideration paid at the sale. Therefore, none of these cases apply.

Moreover, Simon's reliance on T.F. Stone Company, Inc. v. Harper is misplaced. 72 F.3d 466 (5th Cir. 1995). First, the Fifth Circuit's opinion dealt with unauthorized transfers by a trustee (or debtor in possession) post-petition under Section 549 of the Bankruptcy Code, not prepetition transfers that may be fraudulent. The policy reasons avoiding post-petition transfers while a trustee is in place – i.e., to ensure the bankruptcy estate is kept intact – are different than pre-petition fraudulent transfers where the concern may be that a soon-to-be debtor is parting with its assets to put them beyond the reach of creditors. Indeed, the court, in declining to set aside the transfer, explicitly held that the sale in question was a least, in part, to pay for post-petition taxes.[1] Second, because enforcement was for post-petition taxes (at least in part), the court found that under section 549 "present fair" consideration was present – i.e., a post-petition debt was extinguished by a post-petition foreclosure sale. Id. at 470. Third, and though not mentioned in the opinion, it appears that the sale occurred more than two years before the suit was commenced, calling into question whether section 549's two-year limitation was implicated. See id. at 467-68. Finally, and most importantly, the Oklahoma state tax foreclosure procedure in question was a foreclosure sale, which as described above is not how New Jersey law operates. Id. at 467.

Lastly, Defendant's reliance on In re Grandote Country Club Company, LTD is similarly misguided. 252 F.3d 1146 (10th Cir. 2001). First, the plaintiff in the case never clearly set forth its fraudulent transfer theory. See id. at 1151. Second, the court noted that the plaintiff was trying to set aside the incorrect transfer which, under applicable Colorado law, was not permitted

---

[1] Presumably, because enforcement of a post-petition debt was at issue, no one raised the issue of whether the automatic stay in the bankruptcy case was violated by the sale being conducted post-petition.

8

because the state's transfer of property to the transferee was done so as "virgin title … erasing all former interests in the property" and there was thus no "interest of the debtor" to be transferred. Id. at 1151-52. Again, most importantly, the sale in question was acquired through a "regularly conducted" sale subject to competitive bidding. Id. at 1152. As noted above, neither a sale nor competitive bidding was present here.

### E.   Dismissal of the Internal Revenue Service Highlights the Difference Between Mortgage Foreclosures and Tax Foreclosures

Remarkably, and to ensure that market forces would not create fair value for the Debtor's property, the Defendant *voluntarily dismissed* the United States as a defendant in the foreclosure action.[2] By dismissing the I.R.S., Simon was not required to hold a judicial sale and, of course, it chose not to so that it could acquire the property secretly. Simon contends that "the lien of the United States on the subject property did not preclude Simon from completing the tax sale process as it did, even if it had not been dismissed." Reply Brief, p. 11. This is true, as Simon was not precluded from completing the tax sale process; however, if Simon had not dismissed the I.R.S., Simon would have been <u>required</u> to hold a judicial sale and the Debtor's property would have been subject to judicial and competitive bidding prior to the forfeiture to Simon. This only further highlights the difference between New Jersey mortgage foreclosures and tax foreclosures. Simon took affirmative, voluntary steps to chill bidding by dismissing the I.R.S. and precluding the Debtor from receiving reasonably equivalent value in exchange for the transfer of its property.

---

[2] Where the United States holds a subordinate lien on the property sought to be foreclosed, a judicial sale is required in order to discharge that lien. 28 U.S.C. § 2410. In such cases, the court will not enter an order for redemption; instead, the court will enter a final judgment which provides for the holding of a judicial sale in the same manner as an ordinary mortgage foreclosure action. See Realty Assets Props., Ltd. v. Oldham, 356 N.J. Super 16, 24 (App. Div. 2002).

**F.   This Court is Permitted to Look Beyond the Judgment**

At oral argument, the Court declined to consider any facts or circumstances related to the tax sale where Simon was the successful bidder. In <u>BFP</u>, the Supreme Court expressly held:

> <u>Any irregularity in the conduct of the sale</u> that would permit judicial invalidation of the sale under applicable state law <u>deprives the sale price of its conclusive force under § 548(a)(2)(A)</u>, and the transfer may be avoided if the price received was not reasonably equivalent to the property's actual value at the time of the sale (which we think would be the price that would have been received if the foreclosure sale had proceeded according to law).

<u>BFP v. Resolution Trust Corp.</u>, 511 U.S. at 545-546 (emphasis added). Here, there are allegations in a publicly filed criminal indictment filed in this district against Simon and Joseph Wolfson, Simon's principal, related to tax sale foreclosures in New Jersey. A copy of the indictment is attached hereto as Exhibit "B". If this Court determines that <u>BFP</u> applies, the Debtor is entitled to discovery to determine whether there was any irregularity in the conduct of the sale as this Court is expressly permitted to no longer give conclusive effect to the state court judgment.

For reasons stated herein, the Debtor requests that this Court enter summary judgment in favor of the Debtor.

                                        **FOX ROTHSCHILD LLP**
                                        (Formed in the Commonwealth of Pennsylvania)

                                        *Counsel for Debtor and Debtor-in-Possession*

                                        By:   */s/ Raymond M. Patella*
                                               Raymond M. Patella

Dated: December 23, 2013